UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

*In the matter of*

BRENDA M. BOISSEAU, Individually and
as executor of the estate of EDWARD
BOISSEAU,
                     Petitioner.

5:16-CV-0549 (LEK/ATB)

## <u>DECISION AND ORDER</u>

**I.    INTRODUCTION**

On May 10, 2016, the Hanover HHR Employee Benefit Plan ("Plan") removed this action to the Northern District of New York pursuant to 28 U.S.C. § 1441, asserting federal question jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1 ("Notice of Removal") ¶¶ 1, 10. Petitioner Brenda M. Boisseau, executrix of the estate of Edward Boisseau, moved to remand the case to the Surrogate's Court for the State of New York, Oswego County. Dkt. Nos. 9 ("Motion"), 9-1 ("Supporting Affidavit"), 9-2 ("Memorandum"). The Plan opposed Petitioner's Motion, Dkt. No. 13 ("Response"), and Petitioner filed a reply, Dkt. No. 14 ("Reply"). For the following reasons, Petitioner's Motion is granted.

**II.    BACKGROUND**

Before Mr. Boisseau's death on October 15, 2014, he received medical treatment for prostate cancer. Supp. Aff. ¶ 4. During the course of Mr. Boisseau's treatment, the Plan, an employee benefit plan under the Employee Retirement Income Security Act ("ERISA"), paid out a total of $299,975.73 to cover Mr. Boisseau's medical expenses. <u>Id.</u> ¶¶ 2, 5. The decedent and Mrs. Boisseau later brought a personal injury action against their medical providers in the

Onondaga County Supreme Court for medical malpractice, wrongful death, and loss of consortium arising out of alleged medical negligence that occurred in August 2012. Id. ¶¶ 3–5.

In October 2014, after a settlement agreement was reached in the personal injury action, the Plan—through its agent Xerox Recovery Services,[1] a collection agency—asserted a lien against the settlement proceeds seeking repayment of the funds expended to cover Mr. Boisseau's medical treatment. Id. ¶¶ 2, 5. Petitioner sent repeated requests to the Plan seeking information in order to ascertain the validity of the lien. Id. ¶ 8. After failing to receive a satisfactory response from the Plan, Petitioner filed a petition in the Oswego Surrogate's Court under section 1809 of the New York Surrogate's Court Procedure Act seeking to vacate the lien. Id. ¶¶ 2–4; Dkt. No. 2 ("State Record") at 3. As a result, on April 1, 2016, the Surrogate's Court issued an order to show cause as to why the lien should not be dismissed. State R. at 1. The Plan responded by removing the action to this Court, asserting federal question jurisdiction under ERISA, and Petitioner moved to remand. Mem. at 2.

## III. LEGAL STANDARD

28 U.S.C. § 1441(a) permits a defendant to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" to a district court of the United States. Under this statute, "[f]ederal courts have a duty to exercise jurisdiction over properly removed cases even if a related matter is currently proceeding before a state court." Fox & Horan v. Beiny, No. 92-CV-2067, 1992 WL 168261, at *1 (S.D.N.Y. June 29, 1992). The Second Circuit has recognized that, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments,

---

[1] Xerox Recovery Services, Inc., has consented to the removal of the present matter to federal court. Pet. at 66. Xerox is not a party to the case.

federal courts construe the removal statute narrowly, resolving any doubts against removability." Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045–46 (2d. Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)).

Moreover, federal courts may not hear a case in the absence of subject matter jurisdiction. A lack of subject matter jurisdiction may not be waived and may be raised by motion or sua sponte at any time. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107 (2d Cir. 1997); see also Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). In the absence of subject matter jurisdiction, federal courts must remand a removed case to state court. 28 U.S.C. § 1447(c).

## IV. DISCUSSION

Petitioner argues that the Plan could not remove because it was not a defendant in the underlying state court action, and because ERISA does not provide a basis for subject matter jurisdiction in this case. Mem. at 2, 10. But the Court does not reach those issues because there is a separate basis for remand in this case: the probate exception to federal jurisdiction. "The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction." Lefkowitz v. Bank of N.Y., 528 F.3d 102, 105 (2d Cir. 2007) (citing Marshall v. Marshall (Marshall II), 547 U.S. 293, 307 (2006)).

While it is clear that the probate exception applies to diversity jurisdiction, there is some disagreement as to whether it also applies to federal question jurisdiction. The Second Circuit has not explicitly addressed the issue, and there is a split among the circuit courts that have. Compare Jones v. Brennan, 465 F.3d 304, 306–07 (7th Cir. 2006) (finding the probate exception applies to

3

both federal question and diversity jurisdiction cases), and In re Marshall, (Marshall I) 392 F.3d 1118, 1131–32 (9th Cir. 2004) (same), rev'd on other grounds sub nom. Marshall II 547 U.S. 293, and Tonti v. Petropoulous, 656 F.2d 212, 215 (6th Cir. 1981) (same), with In re Goerg, 844 F.2d 1562, 1565 (11th Cir. 1988) (finding that the probate exception "relates only to 28 U.S.C. § 1332 . . . and has no bearing on federal question jurisdiction" (footnote omitted)). When the Supreme Court reversed the Ninth Circuit in Marshall II, it expressly avoided resolving the question of whether the probate exception applies to federal bankruptcy jurisdiction or other forms of federal question jurisdiction. Marshall II, 547 U.S. at 308–09.

The probate exception "has been described as 'one of the most mysterious and esoteric branches of the law of federal jurisdiction.'" United States v. Blake, 942 F. Supp. 2d 285, 294 (E.D.N.Y. 2013) (quoting Ashton v. Paul, 918 F.2d 1065, 1071 (2d Cir. 1990)). It is a doctrine created by the judiciary and largely based on "misty understandings of English legal history." Marshall II, 547 U.S. at 293. The original diversity jurisdiction statute, the Judiciary Act of 1789, was read to grant federal courts jurisdiction over those suits that would have been within the jurisdiction of England's common law courts or its High Court of Chancery. Peter Nicolas, Fighting the Probate Mafia: A Dissection of the Probate Exception to Federal Court Jurisdiction, 74 S. Cal. L. Rev. 1479, 1500 (2001).[2] Because issues of probate fell outside the jurisdiction of those courts (probate of wills and the administration of estates were left to England's ecclesiastical courts), they were also considered to be left out of the diversity jurisdiction granted by the Judiciary Act of 1789. Id.

---

[2] The Judiciary Act of 1789's grant of diversity jurisdiction was limited to "all suits of a civil nature at common law or in equity," which was thought to mean those suits within the "jurisdiction of the English courts of common law ('suits . . . at common law') and the English High Court of Chancery ('suits . . . in equity')." Nicholas, supra, at 1500.

There is good historical reason to think that the probate exception applies equally to both diversity and federal question cases. Jones, 465 F.3d at 306–07. When Congress granted federal question jurisdiction to the federal courts in the Judiciary Act of 1875, it described the scope of that jurisdiction with the same language that was used to describe the scope of diversity cases: "all suits of a civil nature at common law or in equity." Judiciary Act of March 3, 1875, § 1, 18 Stat. 470. Additionally, in their present form, 28 U.S.C. §§ 1331 and 1332(a)—the statutes that grant diversity and federal question jurisdiction—both use the same language to describe the scope of the cases to which they apply: "all civil actions."

Because there is little historical justification for applying the probate exception in diversity but not federal question cases, courts have looked to policy considerations for guidance. "[T]his court has said that, in applying the probate exception, '[t]he evil to be avoided is federal interference with state probate proceedings.' This rationale is as relevant to federal question cases as it is to diversity ones." Marshall I, 392 F.3d at 1132 (second alteration in original) (citation omitted) (quoting Hilton v. Mumaw, 522 F.2d 588, 593 (9th Cir. 1975)). The Seventh Circuit similarly found that "[t]here is no good reason to strain to give a different meaning to the identical language in the diversity and federal-question statutes. The best contemporary reasons for keeping federal courts out of the business of probating wills . . . are as persuasive when a suit is filed in federal court on the basis of federal law as when it is based on state law." Jones, 465 F.3d at 307. The Court agrees with the Seventh and Ninth Circuits' reasoning and finds that the probate exception applies to cases arising out of both federal question and diversity jurisdiction.

Having found that the probate exception applies to federal question cases, the Court sees no reason why it should not apply to cases arising under ERISA. The probate exception operates

5

as a bar to the exercise of federal jurisdiction, and there is no carve out for cases arising under ERISA. See Carpenters' Pension Tr. Fund-Detroit & Vicinity v. Century Truss Co., No. 14-CV-11535, 2015 WL 1439868, at *6 (E.D. Mich. Mar. 27, 2015) (finding that where the probate exception applies, the court lacks jurisdiction to consider ERISA preemption); In re Estate of Lewis, 128 F. Supp. 2d 573, 574 (N.D. Ill. 2001) (same).

The question remains whether the probate exception is applicable given the facts of this case. The Supreme Court clarified the scope of the probate exception in Marshall II, finding that it serves two narrow purposes: (1) it "reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate" and (2) it "precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court." 547 U.S. at 311–12. This case falls squarely within the scope of the second application of the probate exception because it necessarily involves the Court's interference with a res in the custody of a state probate court. See Fisch v. Fisch, No. 14-CV-1516, 2014 WL 5088110, at *3 (S.D.N.Y. Sept. 23, 2014) (finding the probate exception applicable because "[a]ny relief that would be ordered by this Court . . . would necessarily implicate the distribution of a res that is under the control of the Surrogate Court"). As Petitioner makes clear, "[t]he res of Mr. Boisseau is subject exclusively to the jurisdiction of the Oswego County Surrogate's Court. . . . Any claim against the settlement proceeds is a claim against his estate." Mem. at 7. Therefore, the probate exception requires that the Court remand this action to the Oswego County Surrogate's Court.

V. **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Petitioner's Motion to Remand (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   January 30, 2017
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge